IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| ROBERT McWILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 02-CV-455-C-EJL-LMB |
| | ) | |
| v. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| LATAH SANITATION, INC., | ) | |
| d/b/a Moscow Recycling | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Currently pending before the Court are two underlying motions:  (1) Defendant's Second

Motion for Summary Judgment (Docket No. 64) and (2) Plaintiff's Motion for Summary

Judgment (Docket No. 68).  Several related motions are also currently pending before the Court,

including:  (1) Plaintiff's Objection to Defendant's Statement of Undisputed Facts and Motion to

Strike (Docket No. 70); (2) Plaintiff's Motion to Strike Portions of Declaration of Lori K. Winn

and Declaration of David Beyer (Docket No. 28); (3) Plaintiff's Motion to Strike Declaration

Statements by Lori K. Winn (Docket No. 71); (4) Plaintiff's Motion to Strike Second

Declaration Statements by Lori K. Winn Filed on October 23, 2006 (Docket No. 84); (5)

Defendant's Motion to Strike Portions of Affidavit of Robert McWilliams (Docket No. 23); (6)

Defendant's Objection and Motion to Strike Portions of Affidavit of Robert McWilliams

(Docket No. 74);  (7) Defendant's Motion in Limine (Docket No. 32); and (8) Defendant's

**REPORT AND RECOMMENDATION - 1**

Second Motion in Limine (Docket No. 62).[1]  Having carefully reviewed the record, considered

oral arguments, and otherwise being fully advised, the Court enters the following Report and

Recommendation:

## I.  BACKGROUND

In August 1995, Plaintiff, Robert McWilliams, was hired as a warehouse worker by

Moscow Recycling; Moscow Recycling is a subsidiary owned by Defendant, Latah Sanitation,

Inc.  Pl.'s Mot. for Summ. J., p. 2 (Docket No. 68).  Plaintiff continued to work for Defendant

until June 1, 2001.  *Id*.

In January 1998, Plaintiff slipped and fell at work, breaking his leg.  *Id*.  After

hospitalization and a period of recovery, Plaintiff returned to work in May 1998.  *Id*.  Following

a subsequent corrective surgery in August 1998, Plaintiff again returned to work in February

1999.  *Id*. at 2-3.

Relevant to this action, Plaintiff suffered a heart attack on February 17, 2001.  *Id*. at 3.

Six weeks later, Plaintiff's treating physician, Dennis Peterson, released him to return to work

full-time and without restrictions.  Pl.'s Resp. to RFA No. 4, attached as Ex. 1 to Second Dec. of

Charles L. Graham  (Docket No. 67).  When Plaintiff returned to work on April 4, 2001, he

resumed his normal duties, neither requesting nor receiving any special accommodations.  Pl.'s

Resp. to RFA No. 5, attached as Ex. 1 to Second Dec. of Charles L. Graham (Docket No. 67).

---

[1]  On November 14, 2006, Plaintiff moved to withdraw his (1) Motion to Strike
Defendant's Responsive Motions/Documents and related Motion for Attorney's Fees and Costs
(Docket No. 79) and (2) Second Motion to Strike Defendant's Response to Plaintiff's Objection
to Defendant's Statement of Undisputed Facts and Motion to Strike Filed October 19, 2006
(Docket No. 83).  *See* Mtn. to Withdraw, pp. 1-2 (Docket No. 91).  Plaintiff's Motion to
Withdraw is granted.

**REPORT AND RECOMMENDATION - 2**

By June 1, 2001 – the date Plaintiff was terminated – he had been working full-time at Moscow

Recycling for two months.  Pl.'s Mot. for Summ. J., p. 6 (Docket No. 68).  For the two months

leading up to his June 1, 2001 termination, Plaintiff's physical condition had improved and his

health had stabilized.  *Id.*

> Defendant's June 1, 2001 termination letter to Plaintiff reads:

> > Dear Mr. McWilliams:

> > It has come to my attention through a review of your attendance
> > records that you have had an excessive number of absences, totaling
> > 42 days in the past 6 months.  We have been lenient and we have
> > tried to accommodate your needs, however, it has become apparent
> > that you are no longer able to perform your job, even with the
> > accommodations provided by Moscow Recycling.

> > As a result, we are choosing to sever the employer/employee
> > relationship as of June 1, 2001.  Enclosed is your final check for
> > hours worked May 26, 2001 through June 1, 2001, as well as an
> > additional $1,600.00 in severance pay and 8 accrued vacation days.
> > Your medical insurance benefit with Blue Cross of Idaho has been
> > paid through June 30, 2001.

> > It is with deep regret that we are no longer able to employ you.  We
> > wish you only the best in the future.

6/1/01 Ltr. from Lori Winn to Robert McWilliams, attached as Ex. 4 to Aff. of Robert

McWilliams (Docket No. 68, Att. 2).

> Plaintiff claims Defendant wrongfully fired him due to Plaintiff's disability which

required him to be absent from work.  Plaintiff claims discrimination under federal and state law,

intentional and negligent infliction of emotional distress, and wrongful discharge.  Plaintiff

moves for summary judgment on his discrimination claims.

> On the other hand, Defendant claims Plaintiff was not disabled and, therefore, was not

wrongfully terminated from his at-will employment with Defendant.  Instead, Defendant claims

**REPORT AND RECOMMENDATION - 3**

that Plaintiff was fired due to excessive absenteeism and a poor work ethic.  Defendant requests

summary judgment on all counts.

## II.  STANDARD OF REVIEW

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56,

which provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The initial burden is on the moving party to show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law.  *See Steckl v.*

*Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983); Fed. R. Civ. P. 56(c).  An issue is "material"

if it affects the outcome of the litigation.  An issue, before it may be considered "genuine," must

be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury

or judge to resolve the parties' differing versions of the truth at trial."  *Hahn v. Sargent*, 523 F.2d

461, 464 (1st Cir. 1975) (quoting *First Nat'l Bank v. Cities Serv. Co. Inc.*, 391 U.S. 253, 289

(1968).  The Ninth Circuit cases are in accord.  *See, e.g.*, *British Motor Car Distrib. v. San*

*Francisco Auto. Indus. Welfare Fund*, 882 F.2d 371 (9th Cir. 1989).

Moreover, the Supreme Court has made it clear that under Rule 56, summary judgment is

mandated if the non-moving party fails to make a showing sufficient to establish the existence of

an element which is essential to the non-moving party's case and upon which the non-moving

party will bear the burden of proof at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986).  If the non-moving party fails to make such a showing on any essential element, "there

**REPORT AND RECOMMENDATION - 4**

can be no 'genuine issue of material fact,' since a complete failure of proof concerning an

essential element of the non-moving party's case necessarily renders all other facts immaterial."

*Id*. at 323.[2]

Thus, according to the Ninth Circuit, if the moving party meets its initial burden, then the

nonmoving party:

> (1) must make a showing sufficient to establish a genuine issue of
> fact with respect to any element for which it bears the burden of
> proof; (2) must show that there is an issue that may reasonably be
> resolved in favor of either party; and (3) must come forward with
> more persuasive evidence than would otherwise be necessary when
> the factual context makes the non-moving party's claim implausible.

*British Motor Car Distrib.*, 882 F.2d at 374 (citation omitted).

Of course, when applying the above standard, the Court must view all of the evidence in

a light most favorable to the non-moving party.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242,

255 (1986); *Hughes v. U.S.*, 953 F.2d 531, 541 (9th Cir. 1992).  "[I]f a rational trier of fact might

resolve the issue in favor of the nonmoving party, summary judgment must be denied."  *T.W.*

*Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987); *Anderson*,

477 U.S. 242, 248 (1986) (motion for summary judgment must be denied when the "evidence is

such that a reasonable jury could return a verdict for the nonmoving party").

---

[2] *See also*, Rule 56(e) which provides, in pertinent part:

> When a motion for summary judgment is made and supported as
> provided in this rule, an adverse party may not rest upon the mere
> allegations or denials of the adverse party's pleadings, but the adverse
> party's response, by affidavits or as otherwise provided in this rule, must
> set forth specific facts showing that there is a genuine issue for trial.  If
> the adverse party does not so respond, summary judgment, if
> appropriate, shall be entered against the adverse party.

**REPORT AND RECOMMENDATION - 5**

# III.  ANALYSIS

**A.     The Parties' Cross-Motions for Summary Judgment (Docket Nos. 64 and 68)**

The common question among the parties' respective motions for summary judgment centers on the existence of a recognized disability under applicable federal and state laws.  While this is the focus of Plaintiff's motion for summary judgment, Defendant broadens its argument beyond Plaintiff's disability discrimination claim, concurrently seeking dismissal of Plaintiff's intentional infliction of emotional distress, negligent infliction of emotional distress, and wrongful discharge claims.

1.        Disability Discrimination in Violation of the Americans with Disabilities Act ("ADA") and the Idaho Human Rights Act ("IHRA")[3]

The ADA mandates that employers shall not discriminate against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

Here, Defendant argues that Plaintiff was not disabled at the time of his termination and, as a logical result, could not have been fired because of any disability.  Def.'s Mem. in Supp. of Mot. for Summ. J., pp. 4-9 (Docket No. 66).

Notwithstanding prior representations within his pleadings and previously-filed motions, Plaintiff counters by arguing that Defendant erroneously focuses the disability inquiry on Plaintiff's June 1, 2001 termination date.  Pl.'s Resp. to Def.'s Mot. for Summ. J., pp. 1-2

---

[3]  The Idaho Supreme Court has held that the IHRA will be interpreted consistently with the ADA.  *Foster v. Shore Club Lodge*, 908 P.2d 1228, 1232-33 (1995).  Thus, with respect to the existence of a recognized disability, Plaintiff's ADA and IHRA claims are addressed together.  *See Loomis v. Heritage Operating, L.P.*, 2006 WL 2228954 (D. Idaho 2006).

**REPORT AND RECOMMENDATION - 6**

(Docket No. 73). Instead, Plaintiff submits that his February 17, 2001 heart attack and ensuing six-week period away from work represents the relevant period of disability. *Id.* Indeed, in response to Defendant's motion for summary judgment, Plaintiff states in no uncertain terms:

> Mr. McWilliams does not allege that he was an individual with a disability on June 1, 2001, the date his employment was terminated. Rather, Mr. McWilliams alleges that he was a person with a disability between February 17, 2001 and April 4, 2001, the forty-two day absence from work for which his employment was terminated by Moscow Recycling. Whether or not Mr. McWilliams was a person with a disability at the time Moscow Recycling took adverse action against him is irrelevant with regard to his burden of proof.

*Id.* at pp. 2-3. In other words, it would appear that Plaintiff concedes he was not disabled as of June 1, 2001. Rather, Plaintiff seems to be arguing that it is the six-week period following his February 17, 2001 heart attack that defines his disability. Specifically, Plaintiff now claims that he was ultimately terminated in June 2001 "because of" the absences attributable to his heart attack and related health condition between February 17, 2001 and April 4, 2001. Plaintiff therefore argues that it is this six-week period that should be applied against the ADA.[4]

To establish a prima facie case of disability discrimination, Plaintiff must prove that he (1) was disabled under the ADA; (2) was a "qualified" individual and able to perform, with or

---

[4] In its briefing and during oral argument, Defendant maintained that the relevant period of inquiry is the date of Plaintiff's termination - June 1, 2001. Such a position, however, ignores the deservedly discouraged practice of firing an employee solely on the specter or possibility of future health problems originating from a disability, although not technically "disabled" at the time of termination. While the cases cited by Defendant in support of this proposition do, in fact, highlight the termination date as the relevant period of inquiry, those cases dealt with an allegedly disabled individual as of the date of termination. If Plaintiff claimed he was disabled as of June 1, 2001, those cases may apply here; however, Plaintiff does not seem to be making such a claim. Therefore, these cases do not appear to apply. Defendant still appropriately argues that Plaintiff's alleged six-week period of disability does not rise to the level of a covered disability under the ADA and, therefore, is without merit. It is this argument that will be addressed here.

**REPORT AND RECOMMENDATION - 7**

without accommodations, the essential functions of the job; and (3) was terminated by his employer because of his disability.[5]  *Joseph v. Pac. Bell*, 443 F.3d 1050, 1059 (9th Cir. 2006); *Kennedy v. U.S.*, 90 F.3d 1477, 1481 (9th Cir. 1996).  There is no hard-and-fast rule toward consistently applying the ADA; for this reason, courts have been directed by Congress to engage in a case-by-case analysis when considering disability discrimination claims.  *Toyota Motor Mfr. v. Williams*, 534 U.S. 184, 198 (2002).

Under the ADA, disability is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).  Although Plaintiff is not arguing that Defendant "regarded" him as having a an impairment that substantially limited one or more of his major life activities under subsection (C), it is unclear whether and/or to what extent Plaintiff claims such an impairment under subsection (A) or a record of such an impairment under subsection (B).

Construing the evidence in the light most favorable to Plaintiff,[6] the Court will consider Plaintiff's arguments as incorporating both the actual impairment requirement under subsection

---

[5]  There is no dispute that Plaintiff was physically able to perform the essential functions of his job at the time of his termination.  Further, there is clearly an issue of fact as to the reason for Plaintiff's termination, particularly when considering the June 1, 2001 letter and its focus on absences rather than job performance.  Therefore, whether Plaintiff has a disability within the meaning of the ADA as a matter of law is the nub of this proceeding.

[6]  During the February 20, 2008 hearing, Plaintiff's counsel argued that the issues surrounding whether Plaintiff was disabled under the ADA involved numerous questions of material fact.  Therefore, it would seem that Plaintiff is conceding that his motion for summary judgment (Docket No. 68) should be denied for this reason.  Plaintiff's motion for summary judgment should therefore be denied for that reason, as well as the existence of genuine issues of material fact.  Defendant's motion for summary judgment will, in turn, be construed in the light most favorable to the non-moving party - in this case, Plaintiff.

**REPORT AND RECOMMENDATION - 8**

(A) and the record of impairment under subsection (B) at this time.  Given that the intent of the "record of impairment" requirement, in part, "is to ensure that people are not discriminated against because of a history of disability," there is no internal conflict between such an analysis, particularly when considering that both subsections require the existence of a physical impairment that substantially limits one or more of Plaintiff's major life activities.  *See,* 29 C.F.R. § 1630 App., § 1630.2(k).

       *a.*     *Physical or Mental Impairment*

Physical or mental impairment means "[a]ny physiological disorder, or condition, . . . or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs . . . ."  29 C.F.R. § 1630.2(h)(1).  Here, it is undisputed for the purpose of Defendant's motion for summary judgment, that Plaintiff's insulin-dependent diabetes and heart condition are qualifying "physical impairments."  Def.'s Mem. in Supp. of Mot. for Summ. J., p. 5 (Docket No. 66).  However, an impairment alone does not qualify as a disability under the ADA; the impairment must substantially limit one or more of Plaintiff's major life activities.

       *b.*     *Substantially Limits Major Life Activity*

According to the regulations that guide the interpretation of the ADA, an impairment is "substantially limiting" if it renders an individual unable to perform a major life activity that the average person in the general population can perform, or if it significantly restricts the condition, manner, or duration under which an individual can perform such an activity compared to the general population.  29 C.F.R. § 1630.2(j)(1)(I)-(ii).  Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and

**REPORT AND RECOMMENDATION - 9**

working." 29 C.F.R. § 1630.2(I). Other courts have expanded the definition to include sitting,

standing, lifting, and reaching. *See Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 948

(8th Cir. 1999). The Ninth Circuit has recognized:

> the illustrative list of major life activities requires the activity only to
> be of comparative importance and central to the life process itself,
> and it need not have a public, economic, or daily character. To be a
> major life activity, the activity need not be essential to survival, but
> rather of central importance to most people's daily lives.

*Head v. Glacier Northwest, Inc.*, 413 F.3d 1053, 1061-62 (9th Cir. 2005).

Plaintiff himself argues that, from February 17, 2001 to April 4, 2001, he was limited in

at least one major life activity. This is set forth in Plaintiff's own affidavit where he states:

> During those two days [in intensive care] I experienced difficulty
> breathing. I was confined to bed. I received oxygen to aid breathing
> and medications intravenously. Throughout my hospitalization, I was
> unable to take care of myself. I was unable to work. I was unable to
> drive. Generally, I was unable to do most of the things a non-
> impaired person can do. Initially, I didn't have the strength to walk
> at all. As I built up stamina, I could walk approximately ten to
> twenty feet before I needed to catch my breath and rest. I couldn't
> stand for more than approximately one minute at first before
> experiencing weakness and pain in my legs. As my stamina
> improved, I could stand for longer periods of time, several minutes.
>
> I was discharged . . . on February 23, 2001. During the first week
> after discharge, I could walk no more than approximately thirty feet.
> I could not stand for more than one or two minutes. I couldn't raise
> my arms beyond shoulder height. I could not climb the two stairs
> into my home without help. I couldn't work. I couldn't take care of
> myself. I couldn't take care of my household. During this period I
> experienced breathing difficulty. I experienced periodic dizziness,
> nausea, and extreme fatigue.

Aff. of Robert McWilliams, ¶¶ 22 & 23 (Docket No. 68, Att. 2). While Defendant may argue

that the absence of expert testimony as to Plaintiff's debilitating condition is fatal to Plaintiff's

disability claim, Plaintiff has provided sufficient evidence that, during February 17, 2001 to

**REPORT AND RECOMMENDATION - 10**

April 4, 2001, the confluence of his diabetes and heart condition may have prevented him from performing a variety of tasks central to most people's lives.  *See Loomis*, 2006 WL 2228964, *3 (quoting *Head*, 413 F.3d at 1058 ("The Court will note that 'Ninth Circuit precedent does not require comparative or medical evidence to establish a genuine issue of material fact regarding the impairment of a major life activity at the summary judgment stage.  Rather, [its] precedent supports the principle that a plaintiff's testimony may suffice to establish a genuine issue of material fact.'")).  Therefore, at the very least, a question of fact exists as to Plaintiff's alleged impairment of a major life activity between February 17, 2001 and April 4, 2001.

However, regardless of whether a major life activity is impacted, Plaintiff must still demonstrate that his impairment "substantially limits" that major life activity in order to survive summary judgment; if it does not, summary judgment is warranted.  "The word 'substantial' . . . clearly precludes impairments that interfere in only a minor way."  *Toyota*, 534 U.S. at 197 (citing *Albertson's Inc. v. Kirkingburg*, 527 U.S. 555, 565 (1999)).  Therefore, several factors are considered in determining whether a person is substantially limited in a major life activity: (1) the nature and severity of the impairment; (2) its duration or anticipated duration; and (3) its long-term impact.  29 C.F.R. § 1630.2(j)(2)(I)-(iii).  Whether an individual is substantially limited in a major life activity must take into account mitigating measures such as medication and assisting devices.  *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482-83 (1999).

There exists an abundance of case law acknowledging a court's ability to rule, as a matter of law, that the duration of one's impairment of a major life activity was not long enough to rise to the level of a disability covered by the ADA.  *See Thompson v. Eaton Corp.*, 2002 WL 31995670, *9 (W.D. Wisc. 2002) (even though parties agreed that plaintiff was unable to work at

**REPORT AND RECOMMENDATION - 11**

any job for over one month, "problem is that even five weeks is an insufficient period of time to establish a substantial limitation . . . ."); *Jewell v. Reid's Confectionary Co.*, 172 F. Supp. 2d 212 (D. Me. 2001) (finding plaintiff not actually disabled under ADA where, following two heart attacks, doctor gave him clean bill of health and that he was physically capable of all functions of job held); *Taylor v. Nimock's Oil Co.*, 214 F.3d 957 (8th Cir. 2000) (two-month hospitalization period following heart attack not considered significant in light of plaintiff's full release from doctor to return to work without restriction); *Hilburn v. Murata Elecs. North America, Inc.*, 181 F.3d 1220, 1229 (11th Cir. 1999) ( finding thirty-eight day leave secondary to heart attack to be "an insufficient amount of time to support a claim that [plaintiff] was substantially limited in the major life activity of working."); *Colwell v. Suffolk Co. Police Dep't*, 158 F.3d 635 (2d Cir. 1998) (one-month hospital stay followed by six-month home recuperation, coupled with non-particularized and unspecific limitations upon return to work, did not constitute substantial impairment in ability to work); *Sanders v. Arneson Prods., Inc.*, 91 F.3d 1351 (9th Cir. 1996) (Plaintiff's three-month psychological impairment "was not sufficient duration to fall within the protections of the ADA as a disability."); *McDonald v. Commonwealth of Pennsylvania*, 62 F.3d 92, 96 (3d Cir. 1995) (inability to work for two months following surgery not disability).

As applicable to this instant action, these cases suggest that, given the relative short, six-week absence from work, coupled with Plaintiff's return to work without restrictions or special accommodations, he did not, as a matter of law, suffer from a disability (or maintain a sufficient record of a disability) that is recognized by the ADA.  *See Jewell*, 172 F. Supp. 2d at 217 ("It tortures the phrase 'history of substantial limitation' to suggest Plaintiff's admittedly brief

**REPORT AND RECOMMENDATION - 12**

incapacitation, marked by mitigating measures, places him within the 'record of impairment' category of disability."); *but see McKenzie v. Dovala*, 242 F.3d 967, 968, 972-73 (10th Cir. 2001) (finding that reasonable jury could conclude that plaintiff had record of disability when her disorder caused her to miss work for approximately two months); *Katz v. City Metal Co., Inc.*, 87 F.3d 26, 32 (1st Cir. 1996) (overturning district court's judgment as a matter of law in defendant employer's favor, holding "it is at least a debatable question whether, based on [plaintiff's testimony], the jury could conclude that he suffered from a continuing medical condition, persisting beyond the period immediately after the [heart] operation, that substantially limited one or more of his major life activities.")

Although short-term, temporary restrictions generally are not substantially limiting, an impairment does not necessarily have to be permanent to rise to the level of a recognized disability.  Some conditions may be long-term or potentially long-term, in that their duration is indefinite and unknowable or is expected to be at least several months.  Such conditions, if severe, may nonetheless constitute disabilities.  *Katz*, 87 F.3d at 31 ("Examples of impairments that are 'usually not disabilities' because they are 'temporary,' 'non-chronic,' and 'of short duration, with little or no long term or permanent impact,' are broken limbs, sprained joints, concussions, appendicitis, and influenza.'" (citations omitted)).

Yet, the alleged severity, duration, and long-term impact of Plaintiff's condition is somewhat compromised by the fact that Plaintiff returned to work without any restrictions or accommodations.  Further, Plaintiff worked full-time shifts uneventfully for approximately two full months until his termination.  While such factors may imply or suggest that there is no evidence of long-term or residual effects from Plaintiff's heart attack which would preclude a

**REPORT AND RECOMMENDATION - 13**

claim under the ADA, it cannot be said that a rational jury could not conclude otherwise.  It is indeed a close question whether, during the relevant six-week period, Plaintiff has offered sufficient evidence to prove that his medical condition substantially limited one or more of his major life activities within the meaning of the ADA.  Because it is at least a debatable question, I will not, in advance of trial/in an anticipatory manner, substitute my judgment for that of the ultimate trier-of-fact.  Accordingly, a genuine issue of material fact exists as to whether Plaintiff's impairment substantially limited one or more his major life activities.[7]

2.     Plaintiff's Alleged Failure to Exhaust Administrative Remedies as to His Disability Discrimination Claim Under the IHRA

Defendant alternatively argues that Plaintiff failed to exhaust his administrative remedies as to his IHRA claim in particular and, therefore, this Court is without jurisdiction to hear that cause of action.  Def.'s Mem. in Supp. of Mot. for Summ. J., p. 4 (Docket No. 66).

Specifically, Defendant claims that the IHRA requires that a complaint be filed with the Idaho Human Rights Commission ("IHRC") as a condition precedent to litigation and that a civil

_____

[7]  Defendant argues that Plaintiff's application of Social Security disability benefits contradicts his argument that he was capable of working on the day he was terminated.  Def.'s Mem. in Supp. of Mot. for Summ. J., pp. 12-15 (Docket No. 66).  While such a reality may be introduced to challenge Plaintiff's veracity, it does not operate to speak to the alleged disability period between February 17, 2001 and April 4, 2001.

Further, Defendant's "same actor" argument is not sufficient as a matter of law to compel granting the requested motion.  *See* Def.'s. Mem. in Supp. of Mot. for Summ. J., pp. 10-12 (Docket No. 66).  For a favorable inference to apply in this case, Defendant needed to be aware of Plaintiff's disability when hired.  *See Tyndall v. Nat'l Educ. Ctrs.*, 31 F.3d 209, 215 (4th Cir. 1999).  However, Defendant does not offer any evidence that Plaintiff was disabled when it hired him in 1995.  Moreover, the fact that Defendant allowed Plaintiff to return to work following prior hospitalizations does not resolve the issue as a matter of law, particularly when considering that, to act otherwise, may very well be contrary to the ADA.  Regardless, even if the "same actor" inference applied, it is not a *de facto* resolution of Defendant's conduct.  The inference, instead, may be considered by the trier-of-fact when considering  Defendant's motivations.

**REPORT AND RECOMMENDATION - 14**

action may be filed in district court within ninety (90) days of issuance of a notice of

administrative dismissal.  *Id*. (citing I.C. § 67-5908(2)).  Defendant points out that Plaintiff's

initial charge of disability discrimination was not verified and that his claims under the ADA and

IHRA were previously dismissed for this reason (Docket No. 34); however, at the same time,

Defendant acknowledges that the Ninth Circuit allowed Plaintiff to ask the Equal Employment

Opportunity Commission ("EEOC") for leave to file a late verification and then to seek leave

from the district court to file an amended complaint.  *Id*.  Although Plaintiff filed an amended

and verified charge of discrimination with the EEOC, he failed to file an amended charge with

the IHRC to set in motion a companion IHRA cause of action before this Court.  *Id*.  According

to Defendant, without this precondition, Plaintiff cannot file his civil action and, therefore, the

Court does not have jurisdiction over the IHRA claim.  *Id*.

Plaintiff offers no response or argument in opposition.

This, coupled with the apparent fact that Plaintiff has not filed an amended charge with

the IHRC to establish this jurisdiction in federal court, requires dismissal of Plaintiff's discrete

IHRA claim.  While the Ninth Circuit was reluctant to dismiss Plaintiff's ADA claim for the

same technical reason, Plaintiff's failure to cure this administrative defect cannot be justified

again.  Therefore, Defendant's motion for summary judgment should be granted in this respect.

3.      Plaintiff's Intentional Infliction of Emotional Distress Claim

Looking to Idaho law, a claim for intentional infliction of emotional distress requires:

(1) intentional or reckless conduct; (2) extreme or outrageous conduct; (3) a causal connection

between the wrongful conduct and emotional distress, and (4) severe emotional distress.  *Spence*

*v. Howell*, 126 Idaho 763, 774, 890 P.2d 714 (1995)).  Plaintiff argues that there is no evidence

**REPORT AND RECOMMENDATION - 15**

that its conduct was either intentional, reckless, extreme, or outrageous.  Def.'s Mem. in Supp. of

Mot. for Summ. J., p. 15 (Docket No. 66).

Plaintiff offers no response or argument in opposition.

It is well-established that Idaho courts require bad or outrageous behavior on the part of

Defendants to allow a claim for intentional infliction of emotional distress.  *Ward v. Sorrento*

*Lactalis, Inc.*, 392 F. Supp. 2d 1187, 1195 (D. Idaho 2005) (citing *Edmondson v. Shearer*

*Lumber Prods.*, 139 Idaho 172, 75 P.3d 733, 741 (2003) (noting that, even if a defendant's

conduct is "unjustifiable," it does not necessarily rise to the "outrageous" standard; to do so, it

must be "'atrocious' and 'beyond all possible bounds of decency'")).  The fact that an employer

violated a statutory prohibition, by itself, is not sufficient.  *Ward*, 392 F. Supp. 2d at 1195

(granting summary judgment on intentional infliction of emotional distress claim in ADA

context).  As the court in *Ward* reasoned:

> Thus, even assuming that Defendant did fire Plaintiff because he was
> disabled, and even acknowledging that Defendant did so on the very
> first day Plaintiff returned from leave necessitated by his third back
> surgery, the Court still concludes that Defendant's behavior was not
> sufficiently outrageous to justify a claim of intentional infliction
> under Idaho law.  Thus, the Court will grant summary judgment on
> Plaintiff's claim of intentional infliction of emotional distress.

*Id.*

As in *Ward*, Plaintiff offers no evidence beyond the allegation of Defendant's disability

discrimination.  Without more, Defendant's conduct cannot be said to rise to the level of the

requisite "outrageous," "atrocious," and "beyond all possible bounds of decency" standard.  For

this reason, Plaintiff's intentional infliction of emotional distress claim should be dismissed.

Therefore, Defendant's motion for summary judgment should be granted in this respect.

**REPORT AND RECOMMENDATION - 16**

3.      Plaintiff's Negligent Infliction of Emotional Distress Claim

To establish a claim for negligent infliction of emotional distress, there must be both an allegation and proof that a party claiming negligent infliction of emotional distress has suffered a physical injury, i.e., a physical manifestation of an injury caused by the negligently inflicted emotional distress. *Loomis*, 2006 WL 2228964 at *6 (citing *Cook v. Skyline Corp.*, 13 P.3d 857, 865-66 (Idaho 2000)).  Defendant argues that Plaintiff has not offered the necessary evidence establishing the existence of an injury caused by Defendant's allegedly negligent infliction of emotional distress.  Def.'s Mem. in Supp. of Mot. for Summ. J., pp. 15-16 (Docket No. 66).

Plaintiff offers no response or argument in opposition.

Moreover, a review of the record does not disclose evidence of physical injury needed to support a claim for negligent infliction of emotional distress.  To be sure, Plaintiff's own affidavit reads in pertinent part: "Between June and December, 2001, my health continued to improve."  Aff. of Robert McWilliams, ¶ 37 (Docket No. 68, Att. 2).  It does not necessarily follow that Plaintiff now has, or at one time had, a physical injury supporting a negligent infliction of emotional distress claim, when he states in a sworn affidavit that, following his termination in June 2001, his health "continued to improve."  As a consequence, Plaintiff's negligent infliction of emotional distress claim should be dismissed.  Therefore, Defendant's motion for summary judgment should be granted in this respect.

4.      Plaintiff's Wrongful Discharge Claim

Idaho law allows a tort claim to be brought for a termination that is in violation of public policy.  *See, e.g.*, *Ostrander v. Farm Bureau Mut. Ins. Co. of Idaho*, 123 Idaho 650, 851 P.2d 946, 949 (1993); *Jackson v. Minidoka Irrigation Dist.*, 98 Idaho 330, 563 P.2d 54, 57-58 (1977).

**REPORT AND RECOMMENDATION - 17**

Defendant argues that Plaintiff has adequate remedies under the ADA for the alleged disability discrimination against him and, therefore, his separate common law claim for wrongful termination in violation of public policy is precluded.  Def.'s Mem. in Supp. of Mot. for Summ. J., pp. 16-17 (Docket No. 66).  In response, Plaintiff claims that Idaho and Ninth Circuit courts have not addressed whether a claim of discrimination under the ADA preempts a common law claim of wrongful discharge or whether wrongful discharge may be asserted as an independent cause of action.  Pl.'s Resp. to Def.'s Mot. for Summ. J., p. 19 (Docket No. 73).

In *Pavon v. Swift Transp. Co.*, 192 F.3d 902 (9th Cir. 1999), the Ninth Circuit held that a wrongful discharge claim is only available where there is an absence of an adequate statutory remedy.  *Id*. at 909.  Applying this standard, federal courts have determined that statutory remedies under the ADA for the same allegations asserted within a wrongful discharge claim necessarily preclude the latter, separate, duplicative claim.  *See, e.g.*, *Loomis*, 2006 WL 2228964, *6 (granting summary judgment in favor of defendant on plaintiff's wrongful discharge claim where statutory remedies under ADA and IHRA exist).

Here, like *Pavon* and *Loomis*, Plaintiff's allegations supporting his wrongful discharge claim are subsumed by his ADA claim.  Given the interaction between statutory remedies and common law causes of action, Plaintiff's wrongful discharge claim should be dismissed.  Therefore, Defendant's motion for summary judgment should be granted in this respect.

**B.      Plaintiff's Motions to Strike**

Plaintiff brings several motions to strike, including: (1) Plaintiff's Objection to Defendant's Statement of Undisputed Facts and Motion to Strike (Docket No. 70); (2) Plaintiff's Motion to Strike Portions of Declaration of Lori K. Winn and Declaration of David Beyer

**REPORT AND RECOMMENDATION - 18**

(Docket No. 28); (3) Plaintiff's Motion to Strike Declaration Statements by Lori K. Winn (Docket No. 71); and (4) Plaintiff's Motion to Strike Second Declaration Statements by Lori K. Winn Filed on October 23, 2006 (Docket No. 84).  Each of these motions seeks to exclude certain evidence offered in support of (or in opposition to) the parties' respective cross-motions for summary judgment.  The evidence sought to be excluded, however, is not material to the resolution of these motions.  In turn, these motions are moot because the objected-to evidence was not considered in my reaching a decision on the underlying motions for summary judgment. Therefore, Plaintiff's motions to strike should be denied as moot.

## C.    Defendant's Motions to Strike

Defendant likewise brings its own motions to strike, including: (1) Defendant's Motion to Strike Portions of Affidavit of Robert McWilliams (Docket No. 23); and (2) Defendant's Objection and Motion to Strike Portions of Affidavit of Robert McWilliams (Docket No. 74). These motions seek to exclude certain testimony offered by Plaintiff as evidence in support of his own summary judgment efforts, as well as in opposition to Defendant's motions for summary judgment.  The testimony at-issue, however, is not material to the resolution of these two dispositive motions.  Therefore, for the same reasons identified above, Defendant's motions to strike should be denied as moot.

## D.    Defendant's Motions in Limine

Defendant brings two motions in limine: (1) Defendant's (First) Motion in Limine (Docket No. 32); and (2) Defendant's Second Motion in Limine (Docket No. 62).  In its first motion in limine, Defendant argues that evidence of Plaintiff's medical condition, physical limitation, or disability after June 1, 2001 – the date Plaintiff was terminated – is irrelevant to the

**REPORT AND RECOMMENDATION - 19**

consideration of Plaintiff's disability claims and should be excluded at trial.  Def.'s Mot. in

Limine, p. 2 (Docket No. 32).  In its second motion in limine, Defendant argues that the June 6,

2002 Report and Commission Determination finding probable cause to believe that Defendant

engaged in unlawful disability discrimination against Plaintiff should be excluded.  Def.'s

Second Mot. in Limine, pp. 1-2 (Docket No. 62).

In the interest of allowing the presiding judge the opportunity to consider the evidence

that will or will not be introduced and/or admitted at trial, Defendant's two motions in limine

should be deferred at this time and Defendant may raise the issues therein closer to trial.

## IV.  ORDER

In accordance with the foregoing, it is RECOMMENDED that the District Court enter an

Order consistent with the following:

1.  Defendant's Second Motion for Summary Judgment (Docket No. 64) be GRANTED

in part and DENIED in part as follows:

a.  As to Plaintiff's disability claim under the ADA, Defendant's Second Motion

for Summary Judgment (Docket No. 64) be DENIED;

b.  As to Plaintiff's disability claim under the IHRA, Defendant's Second Motion

for Summary Judgment (Docket No. 64) be GRANTED;

c.  As to Plaintiff's intentional infliction of emotional distress claim, Defendant's

Second Motion for Summary Judgment (Docket No. 64) be GRANTED;

d.  As to Plaintiff's negligent infliction of emotional distress claim, Defendant's

Second Motion for Summary Judgment (Docket No. 64) be GRANTED; and

**REPORT AND RECOMMENDATION - 20**

e.  As to Plaintiff's wrongful discharge claim, Defendant's Second Motion for Summary Judgment (Docket No. 64) be GRANTED.

2.  Plaintiff's Motion for Summary Judgment (Docket No. 68) be DENIED;

3.  Plaintiff's Objection to Defendant's Statement of Undisputed Facts and Motion to Strike (Docket No. 70) be DENIED as moot;

4.  Plaintiff's Motion to Strike Portions of Declaration of Lori K. Winn and Declaration of David Beyer (Docket No. 28) be DENIED as moot;

5.  Plaintiff's Motion to Strike Declaration Statements by Lori K. Winn (Docket No. 71) be DENIED as moot;

6.  Plaintiff's Motion to Strike Second Declaration Statements by Lori K. Winn Filed on October 23, 2006 (Docket No. 84) be DENIED as moot;

7.  Defendant's Motion to Strike Portions of Affidavit of Robert McWilliams (Docket No. 23) be DENIED as moot;

8.  Defendant's Objection and Motion to Strike Portions of Affidavit of Robert McWilliams (Docket No. 74) be DENIED as moot;

9.  Defendant's Motion in Limine (Docket No. 32) is deferred to the trial judge;

10.  Defendant's Second Motion in Limine (Docket No. 62) is deferred to the trial judge;

11.  Plaintiff's Motion to Withdraw (Docket No. 91) be GRANTED; therefore, (1) Plaintiff's Motion to Strike Defendant's Responsive Motions/Documents and related Motion for Attorney's Fees and Costs (Docket No. 79), and (2) Second Motion to Strike Defendant's Response to Plaintiff's Objection to Defendant's Statement of Undisputed Facts and Motion to Strike Filed October 19, 2006 (Docket No. 83) is withdrawn; and

**REPORT AND RECOMMENDATION - 21**

12.  Each party to incur their own costs and fees.



DATED:  **March 5, 2008**.

Honorable Larry M. Boyle
U. S. Magistrate Judge

**REPORT AND RECOMMENDATION - 22**