IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

ROBERT McWILLIAMS,                          )
                                            )       Case No. 02-CV-455-C-EJL
            Plaintiff,                      )
                                            )       MEMORANDUM ORDER
vs.                                         )       ADOPTING REPORT
                                            )       AND RECOMMENDATION
LATAH SANITATION, INC.                      )
d./b./a. Moscow Recycling,                  )
                                            )
            Defendant.                      )
_____)

        On March 5, 2008, United States Magistrate Judge Larry M. Boyle issued his Report

and Recommendation in this matter.  Pursuant to 28 U.S.C. § 636(b)(1), the parties had ten

days in which to file written objections to the Report and Recommendation.  Defendant filed

its Objection to Report and Recommendation on March 13, 2008 (Docket No. 105).

Plaintiff filed his response to the Defendant's objection on March 24, 2008 (Docket No.

106).  Pursuant to 28 U.S.C. § 636(b)(1) this Court may accept, reject, or modify, in whole

or in part, the findings and recommendations made by the magistrate.  The Court has

conducted a *de novo* review of the record in order to rule upon the objections of the Plaintiff.

MEMORANDUM ORDER- 1

Magistrate Judge Boyle found genuine issues of material fact exist regarding whether or not Plaintiff's physical impairments between February 17, 2001 and April 4, 2001 substantially limited any major life activities.  Defendant Latah Sanitation, Inc. ("Latah Sanitation") objects to the Report and Recommendation not granting summary judgment in Defendant's favor.   Specifically, Defendant argues Plaintiff Robert McWilliams ("McWilliams") does not have a record of disability as defined by the American with Disabilities Act ("ADA") and the duration of the alleged disability between February 17, 2001 and April 4, 2001 a short-term impairment that cannot as a matter of law rise to the level of a disability under the ADA.  Plaintiff responds that Defendant misapplies the undisputed facts and while Plaintiff returned to work on April 4, 2001, he was still suffering from his impairment due to his heart attack.  Plaintiff does not claim his disability was limited to February 17, 2001 to April 4, 2001, nor does he concede he was not disabled on the date of his termination, June 1, 2001.  The remainder of the Report and Recommendation is not contested by the parties.

## Factual Background

The Court adopts the factual background set forth in the Report and Recommendation, Docket No. 104, pp. 2-4:

> In August 1995, Plaintiff, Robert McWilliams, was hired as a warehouse worker by Moscow Recycling; Moscow Recycling is a subsidiary owned by Defendant, Latah Sanitation, Inc.  Pl.'s Mot. for Summ. J., p. 2 (Docket No. 68).  Plaintiff continued to work for Defendant until June 1, 2001. *Id.*
>
> In January 1998, Plaintiff slipped and fell at work, breaking his leg.  *Id.*

MEMORANDUM ORDER- 2

After hospitalization and a period of recovery, Plaintiff returned to work in May 1998. *Id.* Following a subsequent corrective surgery in August 1998, Plaintiff again returned to work in February 1999. *Id.* at 2-3.

Relevant to this action, Plaintiff suffered a heart attack on February 17, 2001. *Id.* at 3. Six weeks later, Plaintiff's treating physician, Dennis Peterson, released him to return to work full-time and without restrictions. Pl.'s Resp. to RFA No. 4, attached as Ex. 1 to Second Dec. of Charles L. Graham (Docket No. 67). When Plaintiff returned to work on April 4, 2001, he resumed his normal duties, neither requesting nor receiving any special accommodations. Pl.'s Resp. to RFA No. 5, attached as Ex. 1 to Second Dec. of Charles L. Graham (Docket No. 67). By June 1, 2001 – the date Plaintiff was terminated – he had been working full-time at Moscow Recycling for two months. Pl.'s Mot. for Summ. J., p. 6 (Docket No. 68). For the two months leading up to his June 1, 2001 termination, Plaintiff's physical condition had improved and his health had stabilized. *Id.*

Defendant's June 1, 2001 termination letter to Plaintiff reads:

> Dear Mr. McWilliams:
>
> It has come to my attention through a review of your attendance records that you have had an excessive number of absences, totaling 42 days in the past 6 months. We have been lenient and we have tried to accommodate your needs, however, it has become apparent that you are no longer able to perform your job, even with the accommodations provided by Moscow Recycling.
>
> As a result, we are choosing to sever the employer/employee relationship as of June 1, 2001. Enclosed is your final check for hours worked May 26, 2001 through June 1, 2001, as well as an additional $1,600.00 in severance pay and 8 accrued vacation days. Your medical insurance benefit with Blue Cross of Idaho has been paid through June 30, 2001.

It is with deep regret that we are no longer able to employ you. We wish you only the best in the future.

6/1/01 Ltr. from Lori Winn to Robert McWilliams, attached as Ex. 4 to Aff. of Robert McWilliams (Docket No. 68, Att. 2).

MEMORANDUM ORDER- 3

Plaintiff claims Defendant wrongfully fired him due to Plaintiff's disability which required him to be absent from work. Plaintiff claims discrimination under federal and state law, intentional and negligent infliction of emotional distress, and wrongful discharge. Plaintiff moves for summary judgment on his discrimination claims.

On the other hand, Defendant claims Plaintiff was not disabled and, therefore, was not wrongfully terminated from his at-will employment with Defendant. Instead, Defendant claims that Plaintiff was fired due to excessive absenteeism and a poor work ethic. Defendant requests summary judgment on all counts.

## Standard of Review

The Magistrate Judge correctly set forth the appropriate standards of review for the motions addressed in the Report and Recommendation. Accordingly, the Court adopts by reference such standards of review.

## Analysis

Plaintiff alleges Latah Sanitation wrongfully terminated his employment due to his disability which required him to be absent from work for 42 days between February 17, 2001 and April 4, 2001 and such disability continued after he returned to work. In order to prevail on an ADA discrimination claim, an employee must show (1) that he was disabled within the meaning of the ADA; (2) that he was "qualified," meaning he was able to perform the essential functions of the job at issue, with or without a reasonable accommodation; and (3) that the employer terminated him because of his disability. See Wellington v. Lyon County School Dist., 187 F.3d 1150, 1154 (9th Cir. 1999). The term "disability" is defined in 29 C.F.R. § 1630.2(g):

MEMORANDUM ORDER- 4

Disability means, with respect to an individual –

(A) A physical or mental impairment that substantially limits one or more of the major life activities of such individual;
(B) A record of such an impairment; or
(C) Being regarded as having such an impairment.

Only one of these parts must be satisfied for McWilliams  to be considered an individual with a disability.  29 C.F.R. pt. 1630 app. § 1630.2(g).   Judge Boyle evaluated Plaintiff's claims under subsections (A) and (B) since there is no evidence that Defendant regarded Plaintiff as having a disability.[1]  See Report and Recommendation, pp. 8-9.

The determination of whether a person has a disability under the ADA is an individualized inquiry.  Bragdon v. Abbott, 524 U.S. 624, 641-42 (1998).    The Supreme Court in Sutton v. United Airlines, Inc., 527 U.S. 471, 487 (1999), held that "the ADA's coverage is restricted to only those whose impairments are not mitigated by corrective measures."   "A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity."  Id. at 482-83.  Thus, the analysis of whether a person is substantially limited in a

---

[1]As a matter of law, a person is "regarded" as being disabled for purposes of the ADA if "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999); see also 29 C.F.R. § 1630.2( 1 )(1); Deppe v. United Airlines, 217 F.3d 1262, 1265 ("In 'regarded as' cases, the employer must perceive the individual as having an actual disability under the ADA.").

In this case, McWilliams presents no evidence that Latah Sanitation regarded him as having a physical impairment limiting any major life activities.  While the employer was aware of Plaintiff's diabetes and heart attack, there is no evidence in the record that Defendant regarded Plaintiff's diabetes or heart condition as substantially limiting any major life activities.

MEMORANDUM ORDER- 5

major life activity and thus disabled under the ADA is evaluated in the person's corrective state.

It is undisputed that Plaintiff's insulin- dependent diabetes and heart condition qualify as "physical impairments."  The question for this Court is whether the Plaintiff's physical impairments substantially limit one or more of Plaintiff's major life activities.  The term "substantially limits" is defined in 29 CFR § 1630.2(j):

> (I) Unable to perform a major life activity that the average person in the general population can perform; or
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

Section 1630.2(j)(2) lists three factors to consider in determining whether an individual is substantially limited in a major life activity:  "(I) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment."

A.  Was Plaintiff suffering from a disability when he was terminated?

While McWilliams argues in his response to Defendant's objection that he has not conceded he was not disabled when he was terminated and that Plaintiff does not claim that his disability was limited to February 17, 2001 to April 4, 2001.  In reviewing the admissions of Plaintiff, his affidavit and his deposition testimony, the Court finds there is no evidence McWilliams was disabled on his termination date of June 1, 2001, but there is some

MEMORANDUM ORDER- 6

evidence submitted by Plaintiff that he continued to suffer from the physical impairment due to his recovery from his heart attack when he first returned to work on April 4, 2001.

McWilliams admitted in his answers to interrogatories that he was released to work without restrictions by his doctor on April 4, 2001 and there were no further medical determinations he was disabled or restricted at work before he was terminated.  Plaintiff admitted that prior to June 2001, he was able to control his diabetes with regular injections of insulin.  Plaintiff also states in his affidavit that"[m]y diabetic condition has not affected my work at Latah Moscow Recycling.  At times I have experienced fatigue and other minor symptoms attributable to my diabetic condition, but at no time did these symptoms affect my work performance."  Affidavit of Robert McWilliams, Docket No. 21, p. 3, ¶ 10.

Plaintiff states in his affidavit that his doctors and therapists did not think he should return to work so soon, but allowed it reluctantly upon Plaintiff's insistence.  However, the employer had no medical information other than the doctor's medical release to work without restrictions when Plaintiff returned to work.

Plaintiff admitted in his deposition that he was not restricted from work around his home, his mother's home or his rental property when he returned to work.  Plaintiff admitted he worked 8 hour days after he returned to work on April 4, 2001 and generally performed his normal duties.  In his affidavit, Plaintiff states that when he returned to work he had recovered sufficiently to work, but his heart condition remained uncorrected medically.

MEMORANDUM ORDER- 7

After he returned to work, Plaintiff maintains he "continued to suffer from shortness of breath, occasional dizzy spells and fatigue.  I was limited in how much I could exert myself."  Affidavit of Robert McWilliams, Docket No. 21, p. 6, ¶ 25.  While Plaintiff admits he requested no accommodations from his employer, he does state he asked for and received informal help from his co-workers.  Id. at ¶ 27.  Finally Plaintiff states in his affidavit that as of June 1, 2001, he "was able to work and fully fulfill my responsibilities as a warehouse laborer." Id. at p.7, ¶ 29.

There is no independent medical evidence or evidence testified to by Plaintiff that after he was released to work on April 4, 2001, Plaintiff continued to suffer from physical impairments that substantially limited his major life activities in order to be classified as a disability under the ADA.  Nor does Plaintiff offer evidence that he was "substantially limited" from any major life activity even though he may have suffered from shortness of breath, dizzy spells and fatigue upon his initial return to work on April 4, 2001.   Plaintiff testified he was able to maintain his home, his mother's home and his rental property before he was terminated.

Specifically, Plaintiff has failed to establish he was substantially limited from the major life activity of working after April 4, 2001.  In fact, immediately after his termination the Plaintiff applied for unemployment benefits and represented he was available to work without restrictions.

MEMORANDUM ORDER- 8

The regulations define "working" as a major life activity.  29 C.F.R. § 1630.2(I).

Federal regulations also provide that with respect to the major life activity of working,

"substantially limited" means:

> [S]ignificantly restricted in the ability to perform either a class of jobs or a
> broad range of jobs in various classes as compared to the average person
> having comparable training, skills and abilities. The inability to perform a
> single, particular job does not constitute a substantial limitation in the major
> life activity of working.

29 C.F.R. § 1630.2(j)(3)(I).  The question is not whether McWilliams is limited from being a

warehouse laborer for the Defendant, but is he at a minimum, unable to work in a broad

class of jobs.  Sutton, 527 U.S. at 491.

> The EEOC further identifies several factors that courts should consider in
> determining whether an individual is substantially limited in the major life
> activity of working, including the geographical area to which the individual
> has reasonable access, and "the number and types of jobs utilizing similar
> training, knowledge, skills or abilities, within the geographical area, from
> which the individual is also disqualified." §§ 1630.2(j)(3)(ii)(A), (B).  To be
> substantially limited in the major life activity of working, then, one must be
> precluded from more than one type of job, a specialized job, or a particular job
> of choice. If jobs utilizing an individual's skills (but perhaps not his or her
> unique talents) are available, one is not precluded from a substantial class of
> jobs.  Similarly, if a host of different types of jobs are available, one is not
> precluded from a broad range of jobs.

Id. at 491-92.  Based on occupational evaluation as of April 4, 2001 - June 1, 2001, the

Plaintiff was capable of working in a broad class of jobs.  Declaration of Debra Uhlenkott,

Docket No. 17.

The mere presence of a physical impairment does not rise to the level of a disability

under the ADA unless such impairment significantly limits a major life activity. Plaintiff has

not established a genuine issue of material fact regarding whether a major life activity was

MEMORANDUM ORDER- 9

substantially limited as of the date of his termination.  Based on all the above reasons and especially the Plaintiff's own statement he was fully capable of doing his job on June 1, 2001, the Court finds that no reasonable juror could find that Plaintiff was suffering from a disability based on his diabetes or his heart condition for purposes of the ADA when he returned to work without restrictions and up until the date he was terminated.  This objection of the Plaintiff is denied.

      B.  Time Period from February 17, 2001 to April 4, 2001

The Magistrate Judge concluded and this Court agrees that Plaintiff has provided sufficient evidence that during the period of February 17, 2001 to April 3, 2001, McWilliams' physical impairments prevented him from performing a variety of tasks central to most people's lives and that he was not cleared to return to work until April 4, 2001.  It is, however, unclear from the record how long during the recovery period Plaintiff was unable to care for himself, perform manual tasks, walk, see, hear, breath, or learn.  Certainly, right after he was released from the hospital Plaintiff appears to have been very limited in his activities, but the record is unclear if such conditions and limitations lasted  up to April 3, 2001.  Therefore,  the argument becomes, since the employer specifically listed the 42 days of absenteeism in the last six months as the basis for termination, was the Plaintiff terminated due to a "disability" under the ADA that he suffered from the 42 days he was recovering from his heart attack.  Stated another way, are there genuine issues of material fact regarding whether the Plaintiff's physical impairments between February 17, 2001 and April 4, 2001 "substantially limited" a major life activity?

MEMORANDUM ORDER- 10

Defendant maintains that the short term duration of the impairments (February 17, 2001 to April 3, 2001) keeps the physical impairments from qualifying as an impairment that substantially limits a major live activity as a matter of law.  Defendant argues and several courts have agreed that a temporary injury with minimal residual effects cannot be the basis for a sustainable claim under the ADA.  See Sanders v. Arneson Products, Inc., 91 F.3d 1351,1354 (9th Cir. 1996) (psychological impairment for approximately 106 days with no residual effects was not of sufficient duration to fall within the protections of the ADA as a disability); Taylor v. Nimock's Oil Co., 214 F.3d 957 (8th Cir. 2000) (heart disease recovery period did not qualify as substantial limitation on major life activity).   The appendix to the regulations states that  "temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities." 29 C.F.R. pt. 1630 app., § 1630.2(j).  The examples given of recoveries for impairments not rising to the level of a disability are "broken limbs, sprained joints, concussions, appendicitis, and influenza."  Id. "Some conditions may be long-term or potentially long-term, in that their duration is indefinite and unknowable or is expected to be at least several months.  Such conditions, if severe, may constitute disabilities."  2 EEOC Compliance Manual, Interpretations, (CCH) § 902.4, ¶  6884, p. 5319 (1995)

To begin with the Court finds the Plaintiff's diabetic condition does not rise to a level of a disability under the ADA as it did not substantially limit the major life activities of the Plaintiff.  McWilliams' impairment due to diabetes is typically treatable with the use of insulin, so in the corrective state it does not appear that Plaintiff's long term condition of

MEMORANDUM ORDER- 11

diabetes would qualify as an impairment that substantially limits a major life activity.

However, the Court will apply the three factors to be considered in determining if the heart attack recovery period of 42 days rises to the level of a disability in that a physical impairment substantially limits one or more of the major life activities.  The three factors are: 1)  nature and severity of impairment; 2) duration of impairment and 3) and the permanent or long term impact resulting from the impairment.  29 C.F.R. § 1630.2(j)(2).

The nature and severity of the heart condition are disputed in this case.  Plaintiff maintains the heart attack required an intensive recovery that limited his activities and required extensive physical therapy.  Moreover, Plaintiff argues that because his heart condition went uncorrected, the condition continued to be of a critical nature and severe. Defendant argues the severity was limited as Plaintiff returned to work without restrictions in six weeks.

The duration of the disability is also disputed.  Plaintiff concedes he was out six weeks, but claims he was not 100% when he returned to work even though  he was cleared for work without restrictions.  Plaintiff maintains the disability continued past April 4, 2001. Defendant argues the duration to be considered by the Court must be limited to six weeks since McWilliams returned to work without restrictions or accommodations on April4, 2001 and Plaintiff has provided no evidence that if he was limited in his activities when he returned to work that he was "substantially limited" as required by the ADA.  Defendant also relies on Plaintiff's admission he was fully capable performing his duties at the time he was terminated to indicate the alleged disability under the ADA did not continue in its duration

MEMORANDUM ORDER- 12

after Plaintiff returned to work.

The long term and permanent nature of the physical impairment due to the heart attack is also disputed by the parties.  Plaintiff maintains his uncorrected heart condition differs his case from the short-term examples listed in the regulations such as influenza or a broken limb.  Plaintiff argues his diabetes was affecting his kidney function so the bypass surgery he needed when he suffered the heart attack in February 2001 was still an issue when he returned to work.  In fact, Plaintiff had bypass surgery in 2002 because the chronic heart disease worsened.   Plaintiff argues this documented heart condition was a permanent and long-term condition until the cause of his heart attack could be treated with bypass surgery and is a completely different situation than in the examples of the regulations of recovering from a broken leg or the flu.  Defendant submits Plaintiff was cleared to work without restrictions by his doctor, so there were no long-term or permanent impairments based on the heart attack and the impairments he did suffer from were not the basis for his termination.

Because the employer cited the absenteeism from the recovery period as the reason for terminating McWilliams, the issue of whether or not Plaintiff was disabled during that time and the termination was based on the disability is an unresolved issue.  The Court does not find as a matter of law that the 42 days of the absenteeism is dispositive of whether or not Plaintiff suffered a disability between February 17, 2001 and April 3, 2001.  There is no set number of days that defines whether an impairment is or is not a disability under the ADA.  Duration is but one factor for the Court to consider since the determination of

MEMORANDUM ORDER- 13

whether an individual has a disability is an individualized inquiry.  In this case all three of the factors to be considered by the Court are disputed by the parties.

While the Court agrees with the Magistrate Judge that several facts cut against Plaintiff's argument that he suffered a disability between February 17, 2001 and April 3, 2001, the Court is mindful of the case of Katz v. City Metal Co., Inc., 87 F.3d 26 (1st Cir. 1996) wherein the appellate court reversed the trial court's finding that the plaintiff had failed to prove he had a permanent disability resulting from his heart attack.  In Katz, the employee was terminated before he was able to return to work after suffering a heart attack. The Katz court noted:

> As might reasonably be expected after any major trauma and resultant medical procedure or surgery, Katz's ability to breathe, walk and work was substantially limited in the period immediately following the heart attack and angioplasty procedures.  This does not, however, necessarily lead to the conclusion that Katz had a disability.  See McDonald v. Commonwealth of Pennsylvania, 62 F.3d 92, 96 (3rd Cir. 1995) (inability to work for two months following surgery not a disability).

87 F.3d at 31-32.  Because the finding of a disability is an individual one, the Court finds there are genuine issues of material fact regarding this disability determination in this case and summary judgment cannot be granted in either parties' favor on this issue.

C.  Record of an Impairment That Substantially Limits a Major Life Activity

In the response to the objections, Plaintiff argues he had a record of disability based on his diabetes since Latah Sanitation was aware of his diabetic condition since 1996.  In order to have a record of an impairment that substantially limits a major life activity means to have "a history of, or [have] been misclassified as having, a mental or physical

impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k);

Coons v. Secretary of U.S. Dept. Treasury, 383 F.3d 879, 886 (9th Cir. 2004).

In this particular case, McWilliams  provides evidence of his history of an physical impairment of diabetes and a heart condition.  However, the medical records submitted do not indicate that the doctors found the heart attack was caused by his diabetes or that the diabetes substantially limited Plaintiff from  any major life activity. In fact the doctor's medical release to return to work without restrictions supports a conclusion the impairments did not substantially limit Plaintiff from any major life activity after April 4, 2001.  As discussed earlier, Plaintiff's own affidavit indicates his diabetes did not affect his work performance.  Although Plaintiff maintains he has a record of the impairment impacting him after he returned to work, there is no evidence he was unable to do his work or any other major life activity after he returned to work on April 4, 2001.  Finally, there is no record of the health professionals mistakenly reported that Plaintiff's diabetic condition substantially limited a major life activity   Therefore, any claim of a record of disability must be dismissed as a matter of law as Plaintiff has not shown a genuine issue of material fact exists as to this basis for determining disability under the ADA.

D.  Other Legal Claims

The parties have not objected to the Magistrate Judge's findings on the other legal issues, therefore the Court adopts such analysis by reference.

Order

Acting on the recommendation of Judge Boyle, this Court's own analysis of the objections filed in this case and this Court being fully advised in the premises,

**IT IS HEREBY ORDERED**:

1.  Defendant's Second Motion for Summary Judgment (Docket No. 64) is GRANTED in part and DENIED in part as follows:

a.  As to Plaintiff's disability claim under the ADA, Defendant's Second Motion for Summary Judgment (Docket No. 64) is DENIED;

b.  As to Plaintiff's disability claim under the IHRA, Defendant's Second Motion for Summary Judgment (Docket No. 64) is GRANTED;

c.  As to Plaintiff's intentional infliction of emotional distress claim, Defendant's Second Motion for Summary Judgment (Docket No. 64) is GRANTED;

d.  As to Plaintiff's negligent infliction of emotional distress claim, Defendant's Second Motion for Summary Judgment (Docket No. 64) is GRANTED; and

e.  As to Plaintiff's wrongful discharge claim, Defendant's Second Motion for Summary Judgment (Docket No. 64) is GRANTED.

2.  Plaintiff's Motion for Summary Judgment (Docket No. 68) is DENIED;

3.  Plaintiff's Objection to Defendant's Statement of Undisputed Facts and Motion to Strike (Docket No. 70) is DENIED as moot;

4.  Plaintiff's Motion to Strike Portions of Declaration of Lori K. Winn and Declaration of David Beyer (Docket No. 28) is DENIED as moot;

MEMORANDUM ORDER- 16

5.  Plaintiff's Motion to Strike Declaration Statements by Lori K. Winn (Docket No. 71) is DENIED as moot;

6.  Plaintiff's Motion to Strike Second Declaration Statements by Lori K. Winn Filed on October 23, 2006 (Docket No. 84) is DENIED as moot;

7.  Defendant's Motion to Strike Portions of Affidavit of Robert McWilliams (Docket No. 23) is DENIED as moot;

8.  Defendant's Objection and Motion to Strike Portions of Affidavit of Robert McWilliams (Docket No. 74) is DENIED as moot;

9.  Plaintiff's Motion to Withdraw (Docket No. 91) is GRANTED; therefore, (1) Plaintiff's Motion to Strike Defendant's Responsive Motions/Documents and related Motion for Attorney's Fees and Costs (Docket No. 79), and (2) Second Motion to Strike Defendant's Response to Plaintiff's Objection to Defendant's Statement of Undisputed Facts and Motion to Strike Filed October 19, 2006 (Docket No. 83) is withdrawn.

9.  Each party to incur their own costs and fees.

10.  The trial in this matter shall be set for August 19, 2008 at 9:30 a.m. at the Federal Courthouse in Coeur d'Alene, ID [2].

DATED:  **May 19, 2008**

Honorable Edward J. Lodge
U. S. District Judge

---

[2]The parties are further advised that criminal matters may also be set on that date, which would  supersede all civil settings; however, civil matters would commence in the order set at the conclusion of any criminal proceedings, if time allows.

MEMORANDUM ORDER- 17